**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF ILLINOIS**

| | | |
|---|---|---|
| **SHELTER MUTUAL INSURANCE COMPANY**<br><br>**Plaintiff,**<br><br>**vs.**<br><br>**THERAPEUTIC EDUCATION AND CAREER SERVICES, INC., and SHERRIE SMALLS**<br><br>**Defendants.** | ) | **Case No. 22-cv-2510-DWD** |

**MEMORANDUM AND ORDER**

**DUGAN, District Judge:**

On October 28, 2022, Plaintiff Shelter Mutual Insurance Company filed this declaratory judgment action against Defendants Therapeutic Education and Career Services, Inc. and Sherrie Smalls (Doc. 1). Plaintiff seeks a declaration that it does not owe a duty to defend or indemnify Defendant Therapeutic Education and Career Services, Inc. ("Therapeutic") in a case pending before the Circuit Court of Fayette County, Illinois, styled as *Sherrie Smalls v. Therapeutic Education and Career Services, Inc.*, Case No. 2022 LA 1. Defendant Smalls was served on November 9, 2022 (Docs. 9, 11). Defendant Therapeutic was served on November 25, 2022 (Doc. 12). Defendants failed to answer the Complaint or otherwise plead. Thereafter, a Clerk's Entry of Default was entered against both Defendants (Doc. 17). Now before the Court are Plaintiff's Motions for Default Judgement (Docs. 18, 19). For the reasons detailed below, the Motions will be granted.

## Background

### *A. The Underlying Action*

This case arises from an underlying lawsuit filed by Sherrie Smalls against Therapeutic (Doc. 1-1) (the "Underlying Action."). In the Underlying Action, Smalls alleges retaliatory discharge and violations of the Illinois Wage Payment and Collection Act (Doc. 1-1).

In Count 1 of her complaint, Smalls states that she was previously employed with Therapeutic in Vandalia, Illinois and elected to participate in Therapeutic's offered retirement plan (Doc. 1-1). Smalls alleges that Therapeutic failed to make its contributions to Smalls' retirement account and also failed to deposit Smalls' own contributions to her account (Doc. 1-1). Smalls filed a complaint with the Federal Labor Board, which audited her account. During the investigation, Therapeutic offered Smalls a check for $3,691.12, which was less than the amount Therapeutic owed her. Smalls refused this settlement because she wanted the Federal Labor Board to complete its investigation first. Smalls was then terminated. Smalls alleges that she was terminated as a result of direct retaliation for making a claim with the Federal Labor Board and insisting that the Labor Board complete its investigation prior to accepting any settlement offers.

In Count 2 of her complaint, Smalls seeks damages under the Illinois Wage Payment and Collection Act, 820 ILCS 115 *et seq.* for Therapeutic's alleged failure to remit payments deducted from Smalls' wages to a third party in accordance with a Wage

Deduction Order entered in a separate case pending in Fayette County, Illinois, styled as Case No. 17-SC-01701.

***B.*** *The Shelter Mutual Policy*

Plaintiff issued a commercial general liability insurance policy to Therapeutic that was in effect during the relevant period, namely from October 15, 2021 through October 15, 2022 (the "Policy") (Doc. 1-2). The Policy provides coverage for "bodily injury and property damage" that is caused by an "occurrence" and "personal and advertising injury" as defined in the Policy (Doc. 1-2, pp. 1, 4). The Policy defines "bodily injury" as "bodily injury, sickness or disease sustained by a person, including death resulting from any of these at any time." (Doc. 1-2, p. 27, ¶ 3).

"Property damage" is defined as:

> a. Physical injury to tangible property, including all resulting loss of use of that property. All such loss of use shall be deemed to occur at the time of the physical injury that caused it; or
>
> b. Loss of use of tangible property that is not physically injured. All such loss of use shall be deemed to occur at the time of the 'occurrence' that caused it.
>
> For the purposes of this insurance, electronic data is not tangible property.
>
> As used in this definition, electronic data means information, facts or programs stored as or on, created or used on, or transmitted to or from computer software, including systems and applications software, hard or floppy disks, CD-ROMS, tapes, drives, cells, data processing devices or any other media which are used with electronically controlled equipment.

(Doc. 1-2, p. 29, ¶ 17).

"Personal and advertising injury" is defined as:

injury, including consequential 'bodily injury', arising out of one or more of the following offenses:

a. False arrest, detention or imprisonment;
b. Malicious prosecution;
c. The wrongful eviction from, wrongful entry into, or invasion of the right of private occupancy of a room, dwelling or premises that a person occupies, committed by or on behalf of its owner, landlord or lessor;
d. Oral or written publication, in any manner, of material that slanders or libels a person or organization or disparages a person's or organization's goods, products or services;
e. Oral or written publication, in any manner, of material that violates a person's right of privacy;
f. The use of another's advertising idea in your "advertisement"; or
g. Infringing upon another another's copyright, trade dress or slogan in your "advertisement".

(Doc. 1-2, p. 28, ¶ 14).

The coverage provided under the Policy is also subject to certain exclusions, including a "Knowing Violation" exclusion and an "Employment-Related Practices Exclusion." The "Knowing Violation" exclusion provides:

**2. Exclusion**
This insurance does not apply to:
**a. Knowing Violation Of Rights Of Another**
'Personal and advertising injury' caused by or at the direction of the insured with the knowledge that the act would violate the rights of another and would inflect 'personal and advertising injury.'

(Doc. 1-2, p. 22, ¶ 2). The "Employment-Related Practices Exclusion" provides:

This endorsement modifies insurance provided under the following:
COMMERCIAL GENERAL LIABILITY COVERAGE PART

…

**B.** The following exclusion is added to Paragraph **2., Exclusion of Section I – Coverage B – Personal And Advertising Injury Liability**:

This insurance does not apply to:

"Personal and advertising injury" to:

**(1)** A person arising out of any:

**(a)** Refusal to employ that person;

**(b)** Termination of that person's employment; or

**(c)** Employment-related practices, policies, acts or omissions, such as coercion, demotion, evaluation, reassignment, discipline, defamation, harassment, humiliation or discrimination directed at that person; or

...

This exclusion applies:

**(1)** Whether the injury-causing event described in Paragraphs (a), (b) or (c) above occurs before employment, during employment, or after employment of that person;

**(2)** Whether the insured may be liable as an employer or in any other capacity; and

**(3)** To any obligation to share damages with or repay someone else who must pay damages because of the injury.

(Doc. 1-2, p. 20, ¶ B).

**Discussion**

***A.*** *Jurisdiction*

The Court has subject matter jurisdiction over this case pursuant to the federal diversity statute, 28 U.S.C. § 1332. Plaintiff is an alleged citizen of Missouri, while both Defendants are alleged citizens of Illinois (Doc. 1, ¶¶ 2-4). The amount in controversy is alleged to exceed $75,000, exclusive of interest and costs as the effect of granting the relief would be to void coverage for a loss exceeding $75,000 in value. *See, e.g.*, *RSUI Indem. Co. v. JMT Dev. Inc.*, 572 F. Supp. 3d 482, 486 (N.D. Ill. 2021) ("In the insurance context, both the cost of providing a defense and the potential cost of indemnifying [the insured] count toward the amount in controversy.") (internal quotations omitted).

### ***B.*** *Default Judgment*

A defendant must file its answer "within 21 days after being served with the summons and complaint." Fed. R. Civ. P. 12(a)(1)(A)(i). A defendant who fails to do so may be found in default under Fed. R. Civ. P. 55(a). Default judgment establishes, as a matter of law, that a defendant is liable to the plaintiff as to each cause of action alleged in the complaint. *United States v. Di Mucci*, 879 F.2d 1488, 1497 (7th Cir. 1989). When a defendant is found in default, all factual allegations in the Complaint are deemed admitted and may not be contested. *Black v. Lane*, 22 F.3d 1395, 1399 (7th Cir. 1994); *in accord Wehrs v. Wells*, 688 F.3d 886, 892 (7th Cir. 2012); *Dundee Cement Co. v. Howard Pipe & Concrete Prod., Inc.*, 722 F.2d 1319, 1323 (7th Cir. 1983) ("Upon default, the well-pleaded allegations of a complaint relating to liability are taken as true."). "It is well-settled that the court has authority to enter declaratory judgments as well as default judgments for money damages." *See, Grinnell Mut. Reinsurance Co. v. Saldeen*, No. 21-CV-2148, 2022 WL 18779999, at *2 (C.D. Ill. Mar. 23, 2022); *W. World Ins. Co. v. Frieden*, No. 416CV04038SLDJEH, 2018 WL 9880231, at *6 (C.D. Ill. July 18, 2018); *W. Div. Nautilus Ins. Co. v. Front Range Env't, LLC*, No. 14 CV 50083, 2014 WL 4414516, at *2 (N.D. Ill. Aug. 6, 2014).

Default judgment pursuant to Rule 55(b)(2) must be entered by the Court, and the Court may conduct a hearing if it needs to: "(A) conduct an accounting; (B) determine the amount of damages; (C) establish the truth of any allegation by evidence; or (D) investigate any other matter." Fed. R. Civ. P. 55(b)(2). To procure a default judgment under Rule 55(b)(2) plaintiff must establish: "(1) when and against what party the default

was entered; (2) identification of the pleading as to which default was entered; (3) whether the defaulting party is an infant or incompetent person; (4) that the defendant is not in military services such that the Soldiers' and Sailors' Civil Relief Act of 1940 does not apply; and (5) that notice has been served on the defaulting party, if required by Rule 55(b)(2)." *See Blackburne & Sons Realty Cap. Corp. v. Anderson*, No. 18-CV-1115-NJR-RJD, 2019 WL 13204223, at *1 (S.D. Ill. Jan. 16, 2019) (citing *UMG Recordings, Inc. v. Stewart*, 461 F. Supp. 2d 837, 841 (S.D. Ill. 2006)).

Here, all requirements for entry of a default judgment under Rule 55(b)(2) are satisfied, and the Court does not find that a hearing is necessary. As discussed above, entry of default was entered against Smalls and Therapeutic on December 30, 2022 (Doc. 17). Further, in the Supplement Plaintiff filed to its Motions for Default Judgment (Doc. 22), Plaintiff indicates that it has no reason to believe Defendant Smalls is an infant or incompetent person (Doc. 22). Plaintiff's counsel also provided an affidavit stating that he searched the United States Department of Defense's online database and confirmed that Defendant Smalls is not active duty in the United States military (Docs. 22-1, 22-2).

The motions for default judgment also comport with Fed. R. Civ. P. 54(c) by requesting relief that does "not differ in kind from, or exceed in amount" what has been demanded in the Complaint (Docs. 18, 19). Finally, Plaintiff has complied with Southern District of Illinois Local Rule 55.1(b) by mailing a copy of the motion to Defendants' last known addresses (Doc. 20, pp. 2-3) (Plaintiff's counsel confirmed that Plaintiff gave notice to Defendants of the entry of defaults and its Motions for Default Judgment by mailing the documents to their last known addresses and supplying copies to Defendants'

attorneys in the Underlying Action). Thus, the Court **GRANTS** the motions for default judgment against Defendants Smalls and Therapeutic.

*C. Duty to Defend*

Plaintiff seeks a declaration that it does not owe a duty to defend Therapeutic under the Policy with respect to the Underlying Lawsuit. An insurer's duty to defend is determined by comparing the allegations in the underlying complaint to the relevant provisions of the insurance policy. *Health Care Indus. Liab. Ins. Program v. Momence Meadows Nursing Ctr., Inc.*, 566 F.3d 689, 694 (7th Cir. 2009). "An insurer is obligated to defend its insured if the underlying complaint contains allegations that potentially fall within the scope of coverage." *Id.* (citing *Lyerla v. AMCO Ins. Co.*, 536 F.3d 684, 688 (7th Cir. 2008), *Gen. Agents Ins. Co. of Am. v. Midwest Sporting Goods Co.*, 215 Ill. 2d 146 (2005)). In other words, an insurer may refuse to defend only if "it is clear from the face of the underlying complaint that the allegations set forth in the complaint fail to state facts that bring the case within, or potentially within, the coverage of the policy." *Id.*

Plaintiff argus that no coverage exists for the allegations in the Underlying Action because Smalls does not allege "bodily injury or property damage" caused by an "occurrence." Nor does Smalls allege a "personal and advertising injury" that is not otherwise subject to an exclusion. Indeed, the alleged retaliatory termination and violation of the Illinois Wage Payment and Collection Act do not appear to fall under any of the categories of "offenses" enumerated in the definition of "personal and advertising injury" (Doc. 1-2, p. 28, ¶ 14).

Alternatively, Plaintiff argues that if the alleged retaliatory termination of Smalls' employment did fit within one of the enumerated "offenses" and was not excluded by the relevant coverage part, then the Policy's knowing violation exclusion and Employment-Related Practices Exclusion discussed above apply to exclude coverage because the Underlying Action is solely an "employment-related dispute" and the nature of the alleged acts required Therapeutic to act with knowledge. Illinois courts routinely enforce the type of exclusionary language found in Plaintiff's Employment-Related Practices Exclusions, finding that this language covers claims related to employment relationships between the insured and its employees. *See, e.g.*, *Cont'l W. Ins. Co. v. Tony's Finer Foods Enterprises, Inc.*, No. 22-CV-3575, 2023 WL 4351469, at *11 (N.D. Ill. July 5, 2023) (collecting cases, and noting that courts interpret the plan language of Employment-Related Practices Exclusions to require an act or omission made in the context of an employee's employment and related to the employment performance or targeted in a personal way); *State Auto. Mut. Ins. Co. v. Tony's Finer Foods Enterprises, Inc.*, 589 F. Supp. 3d 919 (N.D. Ill. 2022) (employment-related practices exclusion suggests barring coverage for employment claims related to a change in employee's standing or targeted mistreatment of a specific person); *see also* *W. Bend Mut. Ins. Co. v. Rosemont Exposition Servs., Inc.*, 378 Ill. App. 3d 478, 486–92 (2007) (collecting cases).

By their default, Defendants have failed to dispute Plaintiff's contention that the Policy offers no coverage because the Underlying Action does not allege "bodily injury or property damage" caused by an "occurrence" or a "personal and advertising injury", or is otherwise excluded under the Policy's Employment-Related Practices Exclusion.

*See, e.g.*, *Crum & Forster Specialty Ins. Co. v. Spike's Pub & Grub*, No. 3:21-CV-1722-NJR, 2023 WL 34673, at *4 (S.D. Ill. Jan. 4, 2023) (default judgment was appropriate when defaulting party in insurance coverage suit failed to dispute position that the alleged conduct did not fall within scope of coverage). Accordingly, the Court finds Plaintiff is entitled to default judgment as to Count I of the Complaint for Declaratory Judgment. As such, Plaintiff has no duty to Defendant Therapeutic in the Underlying Action.

***D.*** *Duty to Indemnify*

Plaintiff also asks the Court to declare that it has no duty to indemnify Therapeutic. It is well established that the duty to indemnify is narrower than the duty to defend. *Am. Bankers Ins. Co. of Fla. v. Shockley*, 3 F.4th 322, 331 (7th Cir. 2021) (citing *Outboard Marine Corp. v. Liberty Mut. Ins. Co.*, 154 Ill. 2d 90 (1992)). The duty to indemnify is an insurer's duty "to reimburse the insured for losses it incurs directly or to pay sums that the insured becomes legally obligated to pay others." *Id.* (quoting *Keystone Consol. Indus., Inc. v. Emps. Ins. Co. of Wausau*, 456 F.3d 758, 762 (7th Cir. 2006)). The duty to indemnify applies when the insured's claim "actually falls within the scope of coverage." *Id.* (quoting *Madison Mut. Ins. Co. v. Diamond State Ins. Co.*, 851 F.3d 749, 753 (7th Cir. 2017)).

In the Seventh Circuit, the "general rule" is that "a suit to determine an insurer's obligations to indemnify its insured is premature until the insured has been determined to be liable to somebody." *Bankers Tr. Co. v. Old Republic Ins. Co.*, 959 F.2d 677, 680 (7th Cir. 1992). "More precisely, the 'duty to indemnify [is] unripe until the insured has been held liable.'" *Citizens Ins. Co. of Am. v. Thermoflex Waukegan, LLC*, 588 F. Supp. 3d 845, 856

(N.D. Ill. 2022) (citing *Grinnell Mut. Reinsurance Co. v. Reinke*, 43 F.3d 1152, 1154 (7th Cir. 1995)). Furthermore, in addition to concerns about justiciability, a court considering a declaratory judgment generally cannot "decide issues of ultimate fact that could bind the parties to the underlying litigation." *Shockley*, 3 F.4th at 331 (citing *Maryland Cas. Co. v. Peppers*, 64 Ill. 2d 187 (1976)). Thus, determining whether an insurer has a duty to indemnify the insured for a particular liability is only ripe if the insured has been found liable in the underlying litigation. *Id.*

Here, the record before the Court suggests that the Underlying Action remains pending in St. Clair County. Because determining whether Plaintiff has a duty to indemnify would require the Court to adjudicate facts in the Underlying Action, the Court denies that portion of Plaintiff's motion without prejudice.

**Conclusion**

For these reasons, Plaintiff's Motions for Default Judgment against Defendants Sherrie Smalls and Therapeutic Education and Career Services, Inc. (Docs. 18, 19) are **GRANTED in part and DENIED in part**. Plaintiff owes no duty to defend its insured, Therapeutic Education and Career Services, Inc, in the Underlying Action pending in the Circuit Court of Fayette County, Illinois, styled as *Sherrie Smalls v. Therapeutic Education and Career Services, Inc.*, Case No. 2022 LA 1. However, Plaintiff's request for a declaration that Plaintiff owes no duty to indemnify Therapeutic is **DENIED, without prejudice**.

Judgment shall be entered in favor of Plaintiff Shelter Mutual Insurance Company and against Sherrie Smalls and Therapeutic Education and Career Services, Inc. as follows: **Plaintiff Shelter Mutual Insurance Company has no duty to defend**

**Therapeutic Education and Career Services, Inc. against any claim made by Sherrie Smalls with respect to the loss described in Plaintiff's Complaint for Declaratory Judgment.**

The Clerk of Court shall enter judgment accordingly and close this case.

**SO ORDERED.**

Dated: August 3, 2023

/s *David W. Dugan*

DAVID W. DUGAN
United States District Judge